17289.   FORT *et al.* v. SPARKS *et al.*
</div>

STEPHENS, J. 1. Where a contract provides that the owners of land, as the parties of the first part, lease to the parties of the second part, for a consideration, the right to take a certain product known as Fuller's earth out of the land of the parties of the first part, that the parties of the second part pay a certain sum—as $2500—to the parties of the first part as a part of the consideration, and that the parties of the second part have an option for ninety days "to make a more thorough investigation as to the quality of fuller's earth contained in and upon said lands, to determine its commercial value, and that the said parties of the second part, in making such investigation, are to secure competent authority, whether chemists, geologists, or refiners, to determine whether or not it has any commercial value equal to any standard fuller's earth as a merchantable product, . . and at the end of ninety days, after thorough investigation from the records to be made, shown, and exhibited to parties of the first part, [if?] the fuller's earth aforesaid should have no standard commercial value, then the bonus or pledge mentioned is to be returned to parties of the second part, but should it be shown or proved to be of standard commercial value, then the said $2500 pledge or bonus as aforesaid is to be retained and to become the property of the parties of the first part," it is in contemplation of the parties that the fuller's earth shall in fact be of such a character as to have a standard commercial value; and, in order to determine this fact and to authorize the parties of the second part to withdraw from the contract and to obtain a refund of the bonus paid, the parties of the second part must act in good faith and procure an investigation of the character of the product by chemists, geologists, or refiners, or other competent authority, and if, after such investigation

Mines and Minerals, 40 C. J. p. 1014, n. 36.

and the report of such authorities examining the product, and after such reports are submitted to the parties of the first part, it is true in fact that the product has not such a standard commercial value as is contemplated in the contract, the parties of the second part will then be entitled to a refund of the bonus paid. A mere investigation and report of such authorities, as chemists, geologists, or refiners, and a conclusion stated by them to the effect that the fuller's earth has no standard commercial value, will not, standing alone, for the purposes of this contract, be sufficient to establish as a fact that the fuller's earth has no standard commercial value, but before the parties of the second part will be authorized to withdraw from the contract and to obtain a refund of the bonus paid, it must appear in fact that the fuller's earth has no such standard commercial value as is contemplated in the contract.

2. Upon the trial of a suit brought by the parties of the second part against the parties of the first part, alleging that, after an investigation of the product as provided in the contract, and after reports made by competent authorities, it was shown that the fuller's earth had no standard commercial value, it is essential to the right of the plaintiffs to recover that they establish that they had in good faith obtained the reports of competent authorities and submitted them to the parties of the first part, and that in fact that product had no standard commercial value as contemplated in the contract. The reports of such authorities as to the commercial value of the product would be evidentiary as to its commercial value. Where it appears from such reports and from the testimony of the authorities, as well as from other testimony, that the fuller's earth did not in fact have a standard commercial value, the plaintiffs will be entitled to withdraw from the contract. It is not essential that the authorities, in making the examination for the report under the terms of the contract, expose the fuller's earth to every possible test, whether in the laboratory or in refineries, or by actual experiment, but it will be sufficient, as a compliance with the provisions of the contract, that the authorities make such tests as will enable them to determine the value of the product for commercial purposes.

3. Considering the proof as to the tests shown in the reports of the authorities and the testimony given by them and other witnesses in this case, the evidence authorized the inference that the product had no standard commercial value as contemplated in the contract, and a verdict for the plaintiffs will not be set aside upon the ground that it was contrary to the evidence, in that it appeared conclusively, from the evidence, that the fuller's earth was not exposed to every test possible to determine its commercial value.

4. This being a suit by the parties of the second part against the parties of the first part to recover the bonus paid, upon the ground that, after thorough investigation, it was ascertained that the product contracted for had no standard commercial value, the evidence authorized the verdict for the plaintiffs.

*Judgment affirmed. Jenkins, P. J., concurs specially. Bell, J., concurs.*

DECIDED MARCH 4, 1927.

Complaint; from Dooly superior court—Judge Crum.    February 25, 1926.

*J. M. Busbee, W. H. Lasseter, Hooper & Hooper,* for plaintiffs in error.

*T. Hoyl Davis, Watts Powell,* contra.

JENKINS, P. J., concurring specially.    In my opinion the contract provided that before a refund of the deposit could be had by the holders of the option, they must not only furnish to the seller expert opinion that the product had no standard commercial value, but that such opinion must needs be based upon adequate tests and investigations; and that any opinion which might show on its face that no such thorough and comprehensive tests had been made would fail to have such probative value as to meet the requirements of the contract.    Accordingly, it is my opinion that the major portion of the evidence submitted by the holders of the option fails to meet the requirements of the contract as proof that the product in fact had no standard commercial value, since it appears that the only tests actually made related to the use of the product for one purpose, and that such purpose did not in fact constitute the main purpose for which the product might be used, and that the tests made would throw no light upon the efficiency of the product for other purposes of more importance.    However, it appears that the evidence of McGowan and one other witness indicates, without reservation or restriction, that they had made such tests as showed the product to have no commercial value whatsoever.    Since the jury were authorized to accept this evidence, the verdict can not be set aside on the general grounds.